**In the Matter of Joseph M. EWAYS, Debtor.**

**GEORGIA RAILROAD BANK AND TRUST COMPANY, Plaintiff,**

v.

**Joseph M. EWAYS, Defendant.**

**Bankruptcy No. 80–1102.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

Jan. 14, 1981.

Maynard Ramsey, Tampa, Fla., for Georgia Railroad Bank & Trust Co.

Donald C. Evans, Albert P. Lima, Tampa, Fla., for Joseph M. Eways.

### FINDINGS OF FACT, CONCLUSIONS OF LAW

#### MEMORANDUM OF OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration is a complaint filed by Georgia Railroad Bank and Trust Company (the Bank) who seeks a modification of the automatic stay imposed by § 362 of the Bankruptcy Code.

The facts as developed at the Final Evidentiary Hearing, and which control this controversy, can be summarized as follows:

Joseph M. Eways (the Debtor), named in this action as defendant, is a Debtor currently involved in a pending reorganization case under Chapter 11 of the Bankruptcy Code. The Debtor is the owner of certain real property located in Culpeper County, in the State of Virginia. The property consists of approximately 613 acres. The property is basically farm land, and has some buildings and improvements on it, and was farmed to some extent and produced some income for the Debtor and according to the Debtor, will produce some additional income in the future.

In 1977, the Debtor sold this property to a Panamian Corporation. Although this was planned to be a property exchange and not a conventional purchase, according to the tax stamps, the value placed on the property was in excess of $1,000,000. However, due to the inability of the buyer to furnish a good title to the Panamian land, the buyer defaulted and the Debtor foreclosed its interest and recovered ownership of the property.

Sometime prior to April, 1980, the Bank sued the Debtor in the State of Georgia and obtained a judgment against the Debtor in

the amount of $386,046.72. Thereafter, the Bank sued on the Georgia judgment in the Commonwealth of Virginia and obtained a judgment from a Circuit Court for the County of Culpeper on April 29, 1980, and docketed the same on April 30, 1980, (Plf's Exh. # 1 & 2).

According to the laws of the Commonwealth of Virginia; Article 7, ¶ 8.01–458, a judgment is a lien on all the real estate of the judgment defendant from the time the judgment is recorded on the judgment lien docket of the clerk's office of the county where the land is situated (Plf's Exh. # 3).

The record reveals that the real estate taxes on the subject property are delinquent, have not been paid since 1973, and there are now outstanding real estate taxes against this property totaling $23,499.89 and $2,311.95 personal property taxes respectively. The total amount due on the judgment at this time, principal and interest, is $397,159.86. This amount is calculated after crediting the Debtor with some payments received by the Bank. The judgment carries 8½ percent interest and there is $87.68 interest charges accruing daily.

While it appears that there is a Deed of Trust recorded in favor of McGuire, Woods & Battle, a Virginia law firm, securing an indebtedness of the Debtor in the amount of $31,144.18, according to the Debtor his indebtedness has been satisfied and he expects to receive shortly, a cancellation of the Deed of Trust. The Debtor also testified that he expects to pay the delinquent taxes by the end of February.

The Debtor is a real estate investor and is also engaged in selling oriental rugs at retail and wholesale. On July 31, 1980, or 92 days after the Bank's judgment was recorded in Virginia, the Debtor filed his petition for relief under Chapter 11 of the Bankruptcy Code.

The evidence further reveals that according to the expert called by the Bank, the property is worth $840 per acre or has a current fair market value of $516,090. The expert also testified that the customary real estate commission in Virginia for selling similar property is 10% of the sale price.

The Debtor, who has been in the past and is still involved extensively in buying and selling real estate, testified that the property is worth $1,500 per acre and that he now has a contract for sale of same for $735,000 (Plf's Exh. # 1) which sale is targeted for closing May 29, 1981.

As noted earlier, this property was sold by the Debtor in 1977 for $1,000,000, although, as mentioned earlier, it was not a conventional sale but merely an exchange of property.

The Bank seeks a vacation of the automatic stay pursuant to § 362(d)(2)(A)(B) which provides that on request of a party of interest, the court shall grant relief from the stay if the Debtor does not have an equity in such property and such property is not necessary to effect a reorganization. The Code further provides that a party requesting relief under this section has a burden of proof on the issue of the Debtor's equity in the property. § 362(g)(1). In order to obtain relief from the automatic stay under § 362(d)(2), these requirements are in the conjunctive and before a party seeking relief from the stay can prevail, it must establish, with the requisite degree of proof, first, lack of equity and if it fails to do so, it cannot prevail even though the property may not be absolutely necessary to a successful reorganization.

Reviewing the record in light of the foregoing, it is evident that the Bank is not entitled to the relief prayed for for the following reasons:

Even considering the expert testimony presented by the Bank in the best light, a current fair market value of this property is $516,090. The judgment lien of the Bank is $397,159.86. According to the Bankrupt, the mortgage has been satisfied and the taxes, although not been paid, will be paid shortly. Thus, even assuming that the Debtor will not be able to close the proposed sale until the end of May, the additional interest accruing the judgment at the rate of $87.68 per diem will not be more than $12,801.28.

The contract under consideration does not require the payment of a real estate commission. Accordingly, the Debtor has more than $100,000 equity in the subject property based on the Bank's expert testimony and if one accepts the purchase price on the contract (Def's Exh. # 1) as representation of the current fair market value, the equity of the Debtor is more than $400,000. This being the case, it is evident that the Bank failed to carry the burden imposed by § 362(g)(1) of the Code, accordingly, it is not entitled to the relief sought.

A separate final judgment will be entered in accordance with the foregoing.